**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ALONZO SUGGS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE No. 04-CV-730-WDS** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

<u>**MEMORANDUM & ORDER**</u>

**STIEHL, District Judge:**

Before the Court is petitioner's motion to vacate, set aside or correct sentence and amendment thereto, to which the government has filed a response. Also before the Court are petitioner's motions for discovery.

On November 9, 2000, a grand jury returned a superseding indictment against John A. Ellebracht, Joyce Kay Ogle, and petitioner Alonzo Suggs. The superseding indictment charged all defendants in Count 1 with conspiracy to possess with the intent to distribute, and to distribute, cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 2. Alonzo Suggs was also charged in Count 2 of that superseding indictment for unlawful possession of a firearm by a convicted felon. Ellebracht pleaded guilty and testified at trial against Ogle and Suggs.

The jury returned verdicts of guilty as to each defendant (Ogle and Suggs) on Count 1 and against petitioner on Count 2, on March 22, 2001. Petitioner was sentenced to terms of 300 and 120 months' imprisonment to run concurrently, terms of supervised release of 10 years and 3 years to run concurrently, a $2000 fine and a $200 special assessment.

Petitioner's conviction and sentence were affirmed by the Seventh Circuit Court of Appeals in an unpublished order dated February 14, 2003. *United States v. Suggs*, 59 Fed. Appx.

818 (7th Cir. 2003). His request for a writ of certiorari was denied on October 6, 2003. *Suggs v. United States*, 540 U.S. 909 (2003).

In his motion to vacate, petitioner argues that: (1) he received ineffective assistance of counsel during his suppression hearing; (2) he received ineffective assistance of counsel in that his attorney failed to seek severance from his co-defendant and severance of the two counts; (3) he received ineffective assistance of counsel during plea negotiations; (4) he was denied his right to confrontation and received ineffective assistance of counsel in that his attorney failed to raise a *Bruton* issue; (5) he is innocent with respect to Count 1 and received ineffective assistance of counsel in that his attorney failed to make an argument on appeal as to the sufficiency of the evidence on Count 1; (6) he received ineffective assistance of counsel due to his attorney's failure to challenge the amount of drugs attributable to petitioner; (7) he received ineffective assistance of counsel when his attorney failed to challenge his sentence on appeal; (8) the Court lacks jurisdiction to impose the sentence it imposed; and (9) the actual sentence imposed violated petitioner's constitutional rights.

Grounds for relief pursuant to 28 U.S.C. §2255 are more limited than grounds for relief on direct appeal.  A §2255 motion cannot raise issues that were raised on direct appeal absent a showing of changed circumstances. An issue not  raised on direct appeal may not be raised in a § 2255 motion unless the defendant can demonstrate either: (1) both good cause for his failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or (2) that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice.  See, *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996); *Olmstead v. United States*,  55 F.3d 316, 319 (7th Cir. 1995);  *Degaglia v. United States,* 7 F.3d 609, 611 (7th Cir.

2

1993).  However, an ineffective assistance of counsel claim may be made in a subsequent

collateral attack pursuant to 28 U.S.C. § 2255, even if the petitioner could have made the claim

on direct appeal.  See, *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690 (2003).

**I.** **Motion to Suppress**

Petitioner first claims that he received ineffective assistance of counsel with respect to

Count 2 due to counsel's alleged failure to introduce evidence and testimony during a

suppression hearing.  The following factual description is excerpted from the Court's order

denying petitioner's motion to suppress.  (See, 00-CR-30176, Doc. 58).

> Early on the morning of February 26, 1996, St. Clair County
> Sheriff's Deputy Kurt Eversman was dispatched to investigate a complaint
> of shots fired at Greystone Apartments, a public housing project in
> Alorton, Illinois.  As he approached the entrance, Deputy Eversman was
> flagged by Terrance Miller, who stated that he had been shot while riding
> in a car with Carlos Dye.  Miller and Dye identified the shots as coming
> from a gold Nissan Maxima.  Miller stated that the Maxima had Illinois
> plates D58092, and was driven by Alonzo Suggs. He identified Suggs by
> his distinctive sunglasses, and also stated there was another male in the
> car.  Miller said he heard four or five shots coming from the Maxima as
> they drove by, and some had gone through his vehicle resulting in his
> flesh wound.  Eversman inspected the vehicle Miller had been riding in,
> and found it had two bullet holes, one in the windshield, and another in the
> interior part of the passenger's door.  Eversman contacted his supervisor
> and a broadcast was placed for the arrest of Suggs for aggravated battery.
> At approximately 2:00 A.M., Eversman stopped a gold Maxima
> which fit the description given by Miller, including the license plate.
> Eversman was joined at the stop scene by Sergeant Larry Phillips and
> Deputy Ralph Owens.  The defendant got out of the car, leaving the door
> open, and walked toward the back of his car.  Eversman told him to place
> his hands on the trunk, and he complied.  Suggs was wearing black glasses
> that fit the description given by Miller.  The defendant was asked for
> identification, and gave him his driver's license.  He asked Eversman why
> he was being arrested and what was going on.  Eversman replied that he
> was a suspect in an aggravated battery involving a shooting at the
> Greystone Projects.  Suggs replied that he was "not that kind of guy," and
> that if he had wanted to shoot anyone he could have "smoked" Eversman.
> The defendant was secured and placed under arrest.

Meanwhile, Sergeant Phillips had walked up to the car and shone his flashlight into the interior of the car.  He saw what he believed to be the butt of an assault-type pistol under the driver's seat.  He notified Eversman of the presence of the gun, and Eversman placed it in an evidence bag.

When the defendant arrived at the St. Clair County Jail he was interviewed by Deputy Sheriff Steven Johnson at approximately 4:45 A.M.  Johnson administered the defendant his *Miranda* warning, reading from a form used by the St. Clair County Sheriff's Department.  The defendant acknowledged his rights, but refused to sign the form.  Although he said he could read and write, Suggs refused to sign the form because he "was afraid to sign anything."

Johnson questioned Suggs about the shooting and the gun.  When he was asked if the gun was that of someone else he said "No."  He denied being at the Greystone Apartments, stating that he was in the Hawthorn public housing complex, which is a few blocks away.  When asked who the gun belonged to he said "Who do you think it is?  I was the only one in the car and I was the only one driving."  To several of the questions posed by Johnson, the defendant merely lowered his head, shaking it.

The defendant was also asked about whether there was any money in his vehicle.  Although he initially denied it, when confronted with the fact that during the inventory search of the vehicle deputies had found money in the console, he acknowledged that there was approximately $700 in the car....  He said it was from his work at the job, but was unable to state where he worked.

Petitioner's attorney filed a motion to suppress seeking to suppress both the physical evidence seized from the car and petitioner's statements made after arrest.  Counsel argued, *inter alia*, that petitioner was arrested without a warrant and without probable cause, that petitioner had not committed any crime or traffic violation in the presence of the arresting officer, that Eversman had not received information from a reliable informant, that the information received was uncorroborated prior to petitioner's arrest, that petitioner was improperly questioned by Johnson after stating that he did not want to make a statement without his attorney present and refusing to sign a *Miranda* waiver.  The Court concluded that Eversman had sufficient probable cause to stop and arrest petitioner for aggravated battery, given the factors known to him at the

time of the stop and arrest.  The Court further found that the seizure of the gun was proper as it was in plain view of Sergeant Phillips.  Finally, the Court found that petitioner's statements to Johnson were admissible in that waiver may be inferred from a defendant's conduct, even where he has refused to sign a waiver form.

Petitioner now claims that his attorney provided ineffective assistance of counsel at the suppression hearing in that he failed to present evidence and call witnesses in support of the motion to suppress.

With respect to the initial stop and arrest, petitioner has submitted the affidavits of Dye and Miller, who essentially declare that they did not identify petitioner as being in the vicinity where the gunshots originated.  He claims that his attorney improperly failed to interview and call Dye and Miller as witnesses at the suppression hearing to buttress petitioner's position that the traffic stop was not reasonable.

The Court first notes that Dye concedes that he signed a written statement at the time the events occurred in February 1996, regarding the events at issue; he now claims in his affidavit that the written statement does not comport with the oral statements he gave to Eversman or Johnson, but that he signed the statement at the "strenuous insistence" of Johnson. (See, Doc. 8, ¶¶ 34-35).  Recantation does not provide a basis for a § 2255 claim; petitioner must still show excuse for his procedural default for failure to raise the issue on appeal.  Here, petitioner claims that his attorney was ineffective for failing to call Dye and Miller as witnesses at the suppression hearing.

However, there is no indication that either Dye or Miller would have agreed at that time to testify as their affidavits now suggest.  They came forward nine years after the events

5

occurred with this current version of events, and the Court finds this change highly suspect.

Further, even assuming, *arguendo,* that Dye and/or Miller would have agreed to testify, and that the testimony would have comported with the version of events set forth in their recent affidavits, petitioner has not shown that counsel's failure to call them as witnesses constituted ineffective assistance of counsel.  At a minimum, Dye had signed a written statement that events occurred as Eversman testified; to change his story on the stand would have been highly suspicious, and counsel could have reasonably made the choice to refrain from presenting such testimony.

Counsel set forth several viable arguments in the motion to suppress and argued vigorously on behalf of his client at the suppression hearing.  There is no indication that counsel's performance was deficient in this regard.

With respect to the statements made to Johnson, petitioner claims that his attorney improperly failed to call as a witness an attorney that petitioner allegedly telephoned upon arrival at the Sheriff's Department, or petitioner himself, to elucidate the events of  February 26. However, petitioner has submitted no evidence, for example, an affidavit, to support his claim that his "state counsel" instructed Johnson not to interview petitioner.  Moreover, the Court found credible Johnson's testimony that petitioner never indicated that he did not want to make a statement without an attorney present and that he never asked Johnson to obtain an attorney for him.  (See, 00-CR-30176, Tr. 2/1/2001 at p. 53).  The government has submitted the affidavit of petitioner's trial counsel, who states that he does not recall petitioner asking him to contact an attorney to testify that he had called the Sheriff's Department and asked Deputy Johnson not to speak to petitioner.  (See, Doc. 13, Ex. 1).

6

Further, the Court has already concluded upon a review of the record that counsel's performance in relation to the motion to suppress was not deficient in any way.

## II.   <u>Severance</u>

Petitioner next claims that he received ineffective assistance of counsel in that his attorney failed to seek severance from his co-defendant and that his attorney failed to seek severance of the two counts against petitioner. Specifically, he claims that the "spillover effect" of the evidence presented as to each count and each defendant undermined confidence in the verdicts. As the government notes, however, petitioner offers nothing more than conjecture that he was prejudiced by the failure to sever his trial from that of Ogle or the failure to sever the two counts charged against him.  Here, the jury was instructed to separately consider both counts and both defendants.[1] (See, Cause No. 00-CR-30176-WDS, Jury Instructions - Gov'ts. 19).  The jury is presumed to have followed the jury instructions it was given. See, *United States v. Smith*, 415 F.3d 682, 689 (7th Cir. 2005).   Further, petitioner's trial counsel states, in a sworn affidavit, that:

> Regarding the issue of severance I cannot recall at this point why we decided not to seek a severance of defendants or counts but I am confident that our motion to sever defendants as to the Conspiracy count would have been denied.  Allegedly the three defendants were co-conspirators. As to the severance of counts, I believe that this would not have been granted because it would have effectively resulted in a separate trial; i.e., one trial for conspiracy and one trial for Felon in Possession.  I am confident that this issue was discussed with Mr. Suggs and he approved or agreed with our strategy.

---

[1]Moreover, the thrust of petitioner's argument with respect to counsel's failure to move for severance of the two defendants is that "because Ogle's trial was joined [with that of] Mr. Suggs, Mr. Suggs was denied his Sixth Amendment right to confrontation" in violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620 (1968).  Although counsel did not move for severance of petitioner's trial from that of Ogle's, counsel did in fact make a *Bruton* argument at trial, which the Court rejected.

(Doc. 13, Ex. 1, ¶ 5).  Without more, the Court finds that petitioner's claim is without merit.

**III.    Plea Negotiations**

Petitioner next claims that he received ineffective assistance of counsel during plea negotiations.  The affidavit of petitioner's trial counsel states that a plea offer was made, that if petitioner had been willing to cooperate with the government it is possible that a 5.K motion would have been filed, that counsel attempted to convince petitioner that it was not in his best interests to go to trial, and that petitioner rejected the advice of counsel and decided to go to trial. (*Id*., ¶4). Petitioner takes issue with these statements, claiming that he did not tell counsel that he did not want to plead guilty, only that he refused to cooperate with the government.  Petitioner admits that counsel advised him that a plea agreement was offered. Petitioner has not presented any objective evidence that he would have accepted the plea offer in light of the mandatory minimum sentence.  See, *Toro v. Fairman*,  940 F.2d 1065, 1068 (7th Cir. 1991) (petitioner's self-serving statement, standing alone, is "insufficient to establish that, but for counsel's advice, there is a reasonable probability that he would have accepted the plea.").

Based upon the affidavit of counsel, petitioner's own statements, and the lack of objective evidence that petitioner would have accepted a plea offer, the Court finds that petitioner's claim of ineffective assistance of counsel on this ground is without merit.

**IV.    Out-of-Court Statements**

Petitioner next claims that he was denied his right to confrontation and received ineffective assistance of counsel in that his attorney on appeal failed to raise an issue under *Bruton*, 391 U.S. 123, 88 S.Ct. 1620 (holding that one defendant's confession that inculpates another may not be used at a joint trial (unless the defendant who confessed also testifies),

because it deprives the co-defendant of an opportunity to cross-examine the confessing

defendant), with respect to out-of-court statements made by co-defendant Ogle.

As appellate counsel recognized, raising too many claims on appeal detracts from those

claims that counsel believes to have the most merit.  (See, Doc. 2, Ex. 5).  "[C]ourts assess the

lawyer's work as a whole." *Knox v. United States*,  400 F.3d 519, 521 (7th Cir. 2005).

"Experienced advocates since time beyond memory have emphasized the importance of

winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at

most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S.Ct. 3308 (1983), cited

in *Knox*, 400 F.3d at 521. "*Jones* rejected a contention that the sixth amendment requires

appellate counsel to raise all non-frivolous issues."  *Knox*, 400 F.3d at 521.

Here, trial counsel raised the very issue described by petitioner, namely, that Ogle's

July 27, 2000 statement to the police and subsequent recorded conversations between Ogle and

Ellebracht should not have been admitted at trial in that those statements were not made in

furtherance of the conspiracy.  The Court found that *Bruton* was not implicated and overruled

petitioner's objection to the introduction of the evidence, and later denied his motion for new

trial on the same ground.  (See, 00-CR-30176, Docs. 85, 88).

On appeal, counsel argued that the Court committed plain error in allowing the

government to introduce evidence of multiple conspiracies.  *Suggs*, 59 Fed. Appx. at 818.  It was

not unreasonable for appellate counsel to narrow his argument to the one claim that he perceived

to be the strongest. Upon review of  this Court's reasoning and rulings on the *Bruton* issue,

appellate counsel may have concluded that a *Bruton* argument did not have a reasonable chance

of success on appeal. The Court does not find evidence that the performance of petitioner's

appellate counsel was deficient; accordingly, petitioner has not demonstrated the necessary cause and prejudice to now claim in his § 2255 petition that he was denied his right to confrontation, and his motion on this ground is denied.

**V.** **Sufficiency of the Evidence and Plaintiff's Claims of Actual Innocence as to Count I**

In ground five, petitioner clams that he is innocent of the charges alleged in Count 1 and received ineffective assistance of counsel in that his attorney unreasonably failed to make an argument on appeal as to the sufficiency of the evidence on Count 1. The argument is wholly without merit. As the Seventh Circuit stated: "In this case ample evidence supports the conclusion that Ogle and Suggs engaged in the charged conspiracy. The evidence against Suggs was overwhelming...." *Suggs*, 59 Fed. Appx. at 820. Given the facts of this case, it was not unreasonable for appellate counsel to decline to raise a sufficiency of the evidence argument.

**VI.** **Relevant Conduct**

In ground six, as clarified in his reply, petitioner claims that his attorney improperly failed to object to the amount of drugs attributable to petitioner in that petitioner was sentenced based on amounts of drugs that were not part of the offense of conviction. This argument is frivolous. The sentencing guidelines specifically provide that a defendant's base offense level must include not only the amount of drugs involved in the offense of conviction, but also the "acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). See, also, *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991) ("In determining the amount of drugs that were involved in a conspiracy, a sentencing court may consider any conduct that is 'part of the same course of conduct or common scheme or plan as the offense of conviction.' U.S.S.G. § 1B1.3(a)(2).").

Petitioner also argues that the drug amounts were improperly determined based on hearsay statements. "At a sentencing hearing, the rules of evidence do not apply and the sentencing judge is free to consider a wide range of evidence including hearsay." *United States v. Hardamon*, 188 F.3d 843, 849 (7th Cir. 1999) (cite omitted). Petitioner's arguments are unavailing.

**VII.** ***Booker***

In grounds seven, eight and nine, petitioner attempts to make several *Booker*-type arguments. See, *United States v. Booker*, ___U.S.___, 125 S.Ct. 738, 756  (2005) (invalidating certain portions of the Sentencing Guidelines).  The Court first notes that the Seventh Circuit has held that *Booker* is not retroactive on collateral review with respect to criminal cases that became final prior to January 12, 2005.  *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005).  Here, the Seventh Circuit issued its decision on February 14, 2003, and the Supreme Court denied petitioner's request for a writ of certiorari on October 6, 2003.

Further, the Seventh Circuit has noted that an attorney's failure to anticipate *Blakely v. Washington*, --- U.S. ----, 124 S.Ct. 2531 (2004) and *Booker*, --- U.S. ----, 125 S.Ct. 738, does not constitute ineffective assistance of counsel.  See, e.g., *Fuller v. United States*, 398 F.3d 644, 651 n.4 (7th Cir. 2005).  Accordingly, petitioner's claims are without merit.

<u>CONCLUSION</u>

Based on the foregoing, the Court **DENIES** petitioner's motion to vacate, set aside or correct sentence and motions for discovery.  The petition is **DISMISSED** with prejudice. There is no need for an evidentiary hearing pursuant to Rule 8, Rules Foll. 28 U.S.C. § 2255.

11

**IT IS SO ORDERED.**

**DATED: February 22, 2006.**


    s/ WILLIAM D. STIEHL
    **DISTRICT JUDGE**